IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| LINDA JONES, | ) | CASE NO. 1:20-CV-00137 |
| | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | MEMORANDUM   OPINION   AND |
| COMMISSIONER   OF   SOCIAL | ) | ORDER |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me[1] is an action under 42 U.S.C. § 402(g) by Linda Jones for judicial review of the 2018 decision of the Commissioner of Social Security that denied her 2016 application for disability insurance benefits and supplement security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4]

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Sara Lioi. ECF No. 22.
[2] ECF No. 1.
[3] ECF No. 10.
[4] ECF No. 11.

Pursuant to my initial[5] and procedural[6] orders, the parties have filed briefs,[7] as well as supporting fact sheets and charts.[8] They have also met and conferred with the objective of reducing or clarifying the issues,[9] and have participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be reversed, with the matter remanded.

## Facts

### The ALJ's decision

Jones, who was 53 years old on the date of the ALJ's decision, has a high school education and has a history of work as a nurse's aide.[11] At the time of the decision, she was still working part-time as a nurse's assistant, was able to use public transportation, and was able to cook, clean and do laundry independently.[12]

The ALJ found that Jones has the following severe impairments: degenerative disc disease, obstructive sleep apnea, history of small intestine cancer status post open small

---

[5] ECF No. 7.
[6] ECF No. 12.
[7] ECF Nos. 13 (Jones brief), 18 (Commissioner brief), 20 (Jones reply).
[8] ECF Nos. 15 (Jones fact sheet and chart), 18, Attachment (Commissioner chart).
[9] ECF No. 19.
[10] ECF No. 25.
[11] Tr. at 17.
[12] *Id.*

bowel resection with anastomosis, mild cardiomegaly, fatty liver infiltration, hypertension, anemia, hyperlipidemia.[13]

After reviewing the record and concluding, as did the state agency reviewing sources, that none of her impairments met or medically equaled a listing,[14] the ALJ found that Jones has the residual functional capacity (RFC) for light work, with the following additional limitations:

> The claimant can only occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently balance bur only occasionally stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to extreme temperatures and concentrated exposure to wetness, humidity, fumes, odors, dusts, gases, and poorly ventilated areas. The claimant must avoid all exposure to hazardous machinery and unprotected heights.[15]

In connection with arriving at this RFC, the ALJ noted that this is a case where, under the authority of *Drummond v. Commissioner*,[16] an RFC from a prior denied application is binding on this application unless new issues exist or new and material evidence has been submitted.[17] To that point, the ALJ evaluated new evidence concerning Jones's condition that was submitted since the prior decision but concluded that the new evidence doesn't change her RFC and so is not material.[18] Further, he noted that "[b]oth state agency adjudicators adopted the prior RFC" and that he gave "great weight to these

---

[13] *Id*. at 15.
[14] *Id*.
[15] *Id*. at 16.
[16] 126 F.3d 837 (6th Cir. 1997).
[17] Tr. at 12, 16.
[18] *Id*. at 16.

findings as they appropriately applied the doctrine of *Drummond*."[19] Finally, he observed that the new evidence "only affirms the stability of the claimant's illness" and so adopting the prior RFC "is mandated by the *Drummond* decision."[20]

After noting that Jones cannot perform her past relevant work as a nurse's aide, ALJ, relying on the testimony of a vocational expert (VE), then found that a person of claimant's age, education, work experience and RFC could perform the work of a merchandise marker, routing clerk and information clerk, and that these jobs exist in significant numbers in the national economy.[21] Therefore, the ALJ concluded that Jones is not disabled.[22]

The issues

Jones raises two issues:

> 1.    The ALJ failed to adequately develop the record with opinion evidence as to Jones's functional capacity during the relevant period.[23]
>
> 2.    The ALJ failed to assess Jones's subjective complaints in accordance with the regulations.[24]

The Parties' Contention

As to the first issue, Jones initially concedes that "there are no functional opinions from an examining source" that address the relevant period.[25] Rather, she contends that the

---

[19] *Id*. at 17.
[20] *Id*.
[21] *Id*. at 17-18.
[22] *Id*. at 19.
[23] ECF No. 13 at 10-14.
[24] *Id*. at 14-15.
[25] *Id*. at 9.

ALJ impermissibly relied on non-examining opinions and "the ALJ's own reading of raw clinical notes."[26] Further, she maintains that the two state agency reviewers offered "insufficient" and "terse" explanations of why they adopted the prior RFC.[27] In addition, she argues that the ALJ's explanation and interpretation of the clinical notes was insufficient and asserts that the ALJ should have solicited an opinion from a medical expert, ordered another consulting examination, or sent the medical records back to the state agency reviewers for an updated assessment.[28]

As to the second issue, she argues that the ALJ did not consider the difference between the past part-time work and the present part-time work in addressing the credibility of her complaints.[29] Further, she maintains that the ALJ improperly interpreted her ability to do some activities of daily living as reflecting abilities to do similar activities on a regular basis during full-time employment.[30]

The Commissioner, in turn, argues that the ALJ properly applied *Drummond*, as it has been interpreted by *Earley v. Commissioner*.[31] Specifically, the Commissioner maintains that the ALJ determined the current RFC by considering the prior evidence, the prior ALJ's decision, and the new evidence.[32] The ALJ's examination of the new evidence

---

[26] *Id*. at 12.
[27] *Id*.
[28] *Id*. at 14.
[29] *Id*. at 15.
[30] *Id*.
[31] 893 F.3d 929 (6th Cir. 2018).
[32] ECF No. 18 at 4-5.

did not show a substantial deterioration in Jones's condition, in particular, analyzing her cancer treatment, anemia, hypertension, hyperlipidemia and mild cardiomegaly,[33] as well as degenerative disc disease, polymyalgia and obesity.[34]

The Commissioner further contends that the ALJ was within his discretion to decide not to ask for a new medical opinion, noting in addition that Jones was represented by counsel at the hearing who made no argument that a new opinion was needed, indeed arguing that "we are relying on the medical evidence in the file" as well as Jones's testimony to show that her condition precludes her from work.[35] Moreover, citing *Kizys v. Commissioner*,[36] the Commissioner asserts that the ALJ was not impermissibly interpreting raw medical data, but rather rendering an RFC based on his evaluation of the new evidence in the context of the entire record and informed by the functional opinions of the state agency reviewers.[37]

Moreover, allegedly contrary to Jones's claim that she worked fewer hours now in her part-time job than before due to pain, the Commissioner points out that the record shows the opposite.[38]

---

[33] *Id*. at 5 (citing record).
[34] *Id*. at 6 (citing record).
[35] *Id.*
[36] 2011 WL 5024666 (N.D. Ohio Oct. 21, 2011).
[37] Tr. at 7.
[38] *Id.* at 8.

Finally, as to credibility, the Commissioner again points to Jones's part-time work as a negative factor as to her credibility.[39] He also points to Jones's failure to follow the C-Pap treatment prescribed as a negative factor, as were Jones's activities of daily living.[40]

## Analysis

I note initially that review here is conducted under the well-established substantial evidence standard, which need not be restated here.

### Jones's RFC

The parties agree that the key here is whether the ALJ properly evaluated the medical records from the period after the earlier RFC. Of note as well is that Jones concedes that these new records do not include any functional opinion from a medial source. Thus, the essential inquiry is whether the ALJ needed to ask for such a new opinion statement and, if not, whether he properly analyzed the evidence to find that Jones's RFC had not changed.

As to the first prong – whether the ALJ needed to, or should have, asked for a new medical opinion – I note first, as did the Commissioner here, that *Earley* clarifies *Drummond* in that it holds that *res judicata* as to an RFC does not apply when a claimant files a subsequent application for benefits for a different period.[41] Here, that exception to *res judicata* applies in that Jones's early application for benefits was for a period alleging

---

[39] *Id.* at 10.
[40] *Id*. at 10-11.
[41] *Earley*, 893 F.3d at 933.

disability on October 18, 2009,[42] while the current application alleges disability as of August 18, 2012.[43] Thus, the ALJ overstated *Drummond* as requiring that he apply the former RFC unless new and material evidence led to a different result.[44] Under *Earley*, no such *res judicata* applies.

I note further the Commissioner's reliance on *Kizys*. *Kizys* stands for the proposition that the ALJ may craft an RFC without a medical functional opinion where, *inter alia*, the medical evidence shows "relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity."[45] But like the situation confronting Magistrate Judge Parker in the recent case of *Falkosky v. Commissioner*,[46] this case is not one where Jones has "relatively little physical impairment," but instead has severe impairments.[47] Yet, in *Falkosky* but not here, there were no medical functional opinions but the ALJ "evaluated [the claimant's] records and inferred from his limited treatment record" the claimant's functional capacity."[48] Instead, in this case, as was detailed above, the ALJ relied in part on the functional opinions of state agency reviewers.[49] Thus, the ALJ was not in the

---

[42] Tr. at 91.

[43] *Id*. at 12.

[44] Id. at 16.

[45] 2011 WL 5024866, at *2.

[46] 2020 WL 5423967 (N.D. Ohio Sept. 10, 2020).

[47] *Id*. at *8.

[48] *Id*.

[49] Tr. at 15.

position of fashioning an RFC for a claimant with multiple severe impairments without any medical opinion as to functional limitations.[50]

That said, the state agency opinions on which the ALJ here relied are dated February 15, 2017[51] and May 4, 2017.[52] As Jones observes, the "new" evidence considered by the state agency reviewers for these 2017 functional opinions were: an x-ray from October 2016, an echocardiogram from January 2017 and a clinical exam from 2017.[53] By contrast, Jones's records with Dr. Yevgeniya Dvorkin, M.D., date from February 2017 and continue to December 2017 and have multiple findings as to neck and back pain and attendant limitations.[54] In addition, there is an urgent care record from December 2017 showing Jones sought treatment for right leg pain and numbness that only moderately responded to treatment and that the treating staff thought was neuropathic.[55] Likewise, treatment notes from her physical therapist in March, April and December of 2017, as well as February of 2018, show slow gait, numbness and tingling in the right hand, muscle imbalance and a high amount of pain.[56]

Significantly, none of these record were reviewed by the state agency sources the ALJ relied upon for the RFC and all of these latter findings contradict the ALJ's

---

[50] *Falkosky*, 2020 WL 5423967, at *8.
[51] Tr. at 113-18.
[52] *Id*. at 139-40, 149-50.
[53] ECF No. 13 at 12 (citing record).
[54] Tr. at 1079, 1061, 1385-90, 1489-95.
[55] *Id*. at 1291-95.
[56] *Id*. at 1073-75, 1056-57, 1337-40, 1397-99.

characterization of Jones's records as "consistently" showing "normal gait, station, reflexes and sensation throughout."[57]

In sum, as observed above, this is a situation where the claimant has severe impairments and the new evidence since the old RFC is detailed. Moreover, the two state agency opinions that are cited are themselves outdated in that they did not consider treatment records extending for nearly a year. As such, those old, deficient opinions cannot be substantial evidence in support of the present RFC. In addition, the ALJ likely erred in thinking that *Drummond* made the former RFC obligatory here, unless new and material evidence altered that finding. Therefore, the matter needs to be remanded to re-examine the RFC.

Credibility

Given that the matter is being remanded to consider, *inter alia*, the effects on her RFC of numerous treatment notes that describe Jones's pain in connection with functional limitations such as numbness, imbalance and slow gait, the ALJ on remand is directed to re-evaluate Jones's complaints of pain and other functional limitations.

---

[57] *Id*. at 16.

**Conclusion**

For the reasons stated, the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 31, 2021                                  s/William H. Baughman Jr.
                                                       United States Magistrate Judge